IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY KENGERSKI, | ) |
| Plaintiff, | ) 2:17-cv-1048-NR |
| v. | ) |
| COUNTY OF ALLEGHENY, | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Plaintiff Jeffrey Kengerski's sole remaining claim is a Title VII retaliation claim. The Court previously granted summary judgment to Defendant County of Allegheny on the basis that Mr. Kengerski did not engage in protected activity. ECF 90; ECF 91. On appeal, the Third Circuit reversed that decision, concluding that Mr. Kengerski made the requisite showing. *Kengerski v. Harper*, 6 F.4th 531 (3d Cir. 2021). The Third Circuit then remanded the case for this Court to consider the sole remaining issues left unresolved on summary judgment: (1) whether there was a causal connection between Mr. Kengerski's protected activity and his termination (*i.e.*, the causation element of Mr. Kengerski's prima facie burden); and (2) if so, whether the County's reason for terminating Mr. Kengerski was legitimate or pretextual.[1] *See id.* at 541.

As it's the County moving for summary judgment (ECF 56), the County must show "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors,*

---

[1] The parties agree that these are the two remaining issues on the County's motion for summary judgment. ECF 102, pp. 1-2; ECF 103, p. 1.

*Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The County bears the initial burden to show the lack of any genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* (citation omitted).

After carefully considering the parties' briefs, the record, and oral argument,[2] the Court finds that the issues of causation and pretext are overwhelmed by factual disputes, and thus require a jury to weigh the evidence and the credibility of various individuals. Further, as evidenced by these disputes, the Court finds that Mr. Kengerski has provided sufficient evidence to survive summary judgment. Summary judgment is therefore improper, so the Court denies the County's motion as to Mr. Kengerski's Title VII retaliation claim.

To establish a prima facie Title VII retaliation claim, Mr. Kengerski "must tender evidence that … there was a causal connection between [his] participation in the protected activity and the adverse employment action."[3] *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (cleaned up). If Mr. Kengerski makes this showing, and the County presents a "legitimate, non-retaliatory reason for its conduct" (which it has), Mr. Kengerski "must produce some evidence from which a jury could reasonably [conclude]" that the County's "proffered explanation was false,

---

[2] The Court held a status conference on September 8, 2021, inviting counsel to submit supplemental briefs on the two remaining issues. ECF 99; ECF 100. The Court then held oral argument on these issues on October 5, 2021. ECF 106.

[3] Mr. Kengerski's prima facie burden has three elements. He "must tender evidence that (1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (cleaned up). Only the third element is at issue here.

and that retaliation was the real reason for the adverse employment action." *See id.* at 342 (cleaned up).

First, as to the issue of causation at the prima facie stage, as the Third Circuit in this case emphasized, the Court must consider "the circumstances as a whole[.]" *Kengerski*, 6 F.4th at 541, n.9 (citation omitted). Relevant considerations that can show a causal connection between the protected activity and the adverse employment action include any intervening antagonism by the employer, inconsistent explanations for the adverse action, or other similar circumstantial evidence that could support an inference of a causal connection. *Id.*; *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 311 (W.D. Pa. 2020) (Hornak, C.J.) (citations omitted).

Causation is a fact-specific and contextual determination. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) ("Whether a causal link exists must be considered with a careful eye to the specific facts and circumstances encountered." (cleaned up)); *Kachmar v. SunGard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997) ("The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific."). And a "plaintiff may establish causation through evidence gleaned from the record as a whole, and viewed with a wider lens." *Thomas*, 503 F. Supp. 3d at 311, 315 (cleaned up); *see also Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259-60 (3d Cir. 2017) ("[T]he plaintiff must produce evidence sufficient to raise the inference that her protected activity was the *likely reason* for the adverse employment action. … These [listed factors] are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." (cleaned up)).

Second, because the County has articulated a legitimate, non-retaliatory reason for Mr. Kengerski's termination, Mr. Kengerski must show pretext by "demonstrat[ing] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the [County's]

explanation is unworthy of credence, and hence infer that the employer did not act for the asserted non-retaliatory reasons." *Carvalho*, 851 F.3d at 262 (cleaned up). That is, to survive summary judgment, Mr. Kengerski "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (cleaned up). Just as causation is a fact-specific and contextual determination, *Budhun*, 765 F.3d at 258, "[d]etermining pretext is a fact-based inquiry," *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005).

Finally, as many courts have recognized, while the issues of causation and pretext are separate elements of a retaliation claim, the evidence showing the two may be the same. *See, e.g.*, *Carvalho*, 851 F.3d at 262 ("[As to pretext,] [w]e rely largely on the evidence produced in support of [Plaintiff's] prima facie case, recognizing that nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other." (cleaned up)); *Thomas*, 503 F. Supp. 3d at 315 (concluding that certain evidence "would both support a jury finding of causation and a finding that the Defendant's non-discriminatory reasons were pretextual").

Turning to the record here, and drawing all reasonable inferences from the record in Mr. Kengerski's favor, as required, there are numerous factual disputes and credibility determinations that must be resolved, rendering summary judgment inappropriate. Indeed, these disputes exist because the parties point to competing evidence, demonstrating that Mr. Kengerski has done enough at this stage to survive summary judgment.

By way of example—and this is not exhaustive—the parties dispute whether Warden Harper and Deputy Warden Wainwright ignored, due to animus, Mr.

Kengerski's allegedly legitimate complaints and requests following the latter's participation in protected activity. The parties also dispute whether Mr. Kengerski was a target within the workplace following his protected activity, and whether Warden Harper and Deputy Warden Wainwright learned of and ignored this dynamic. Relatedly, Mr. Kengerski points to the purported fact that Warden Harper and Deputy Warden Wainwright were quick to investigate Mr. Kengerski when an accusation was lodged against him, but slow to investigate any complaints lodged by Mr. Kengerski. *See, e.g.*, *Nguyen v. AK Steel Corp.*, 735 F. Supp. 2d 346, 372 (W.D. Pa. 2010) (Lenihan, M.J.) ("[W]here the plaintiff comes forward with evidence to show the company investigated him differently because of his national origin, an inference of discrimination can be drawn." (citation omitted)).

It's further disputed whether Warden Harper and Deputy Warden Wainwright investigated Mr. Kengerski differently from others, including by failing to obtain a report (or any response to the accusations) from Mr. Kengerski before terminating him. The parties likewise point to competing evidence on whether Mr. Kengerski was held to a different standard than others, including whether various "zero-tolerance policies" were enforced more harshly and strictly against Mr. Kengerski than others.

A jury also needs to assess various individuals' credibility. For example, Warden Harper decided that Mr. Kengerski should be escorted from the premises for violating workplace policies after purportedly weighing the credibility of various individuals' reports. Yet a jury could reasonably conclude that Warden Harper lacks credibility, given that he failed to obtain a report from Mr. Kengerski before he apparently weighed Mr. Kengerski's credibility. Additionally, Warden Harper made the decision to have Mr. Kengerski escorted from the premises only a short time after he received all of the relevant reports, upon which he weighed the credibility of the individuals involved and reviewed video footage of the incidents. A jury could reasonably conclude that Warden Harper's account of his decision-making is not

credible, considering the circumstances and timeframe. At bottom, while a jury could believe Warden Harper, what matters is that the issues of credibility must be decided by a jury.

The Court emphasizes that this is not an exhaustive summary of the factual disputes material to the issues of causation and pretext. Ultimately, it suffices to say that because there are genuine disputes of material fact, and because Mr. Kengerski has pointed to sufficient evidence to survive summary judgment, the Court denies the County's motion for summary judgment as to the Title VII retaliation claim.

Finally, the Court also denies the County's motions to strike. ECF 73; ECF 74. Neither motion is integral to, nor affects, the Court's decision on the motion for summary judgment, so the motions to strike are denied as moot. To be clear, the Court finds that material factual disputes remain even if the introduction and factual background in Mr. Kengerski's principal summary-judgment brief, as well as Mr. Kengerski's declaration, are excised from the summary-judgment record.[4]

**********************

For all of these reasons, this **19th day of October, 2021**, it is **hereby ORDERED** that Defendant's motion for summary judgment (ECF 56) is **DENIED**

---

[4] Even if the Court were to consider the County's motions to strike, they would be denied on the merits. The introduction and factual background in Mr. Kengerski's brief do not violate Local Rule 56; nor do they prejudice the County, as the Court derives the facts from the parties' concise statements of material facts and documents of record cited in the concise statements. And with respect to Mr. Kengerski's allegedly sham declaration, the County has failed to meet its burden to strike the declaration. The County provides only a few examples of purportedly impermissible statements in Mr. Kengerski's declaration, by pointing to various portions in his deposition transcript. The County then summarily states that it would be too burdensome and time consuming to address how Mr. Kengerski's entire declaration is a sham declaration. The County instead invites the Court to review the 381-page deposition transcript so the Court could see that "[Mr.] Kengerski was questioned extensively on every issue raised in his complaint, his answers to discovery, and the material issues in this lawsuit." ECF 73, p. 6. But without a more specific motion, which identifies each averment compared against each inconsistent or contradictory

- 7 -

as to Plaintiff's Title VII retaliation claim.[5]  **It is further ORDERED** that Defendant's motions to strike (ECF 73; ECF 74) are **DENIED as moot**.


BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

portion of deposition testimony, the County cannot meet its burden to obtain the relief it seeks.

[5] Plaintiff's other claims have already been dismissed from this case, were not appealed as part of the prior Third Circuit appeal, and are therefore waived. *See In re Titus*, 916 F.3d 293, 302 (3d Cir. 2019) ("An issue is waived on remand if it was not raised in a party's prior appeal." (cleaned up)).