## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY KENGERSKI, | ) | |
| | ) | |
| | ) | 2:17-cv-1048-NR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF ALLEGHENY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM ORDER

Before the Court is Plaintiff Jeffrey Kengerski's motion for an award of backpay, front pay, and prejudgment interest on the jury's compensatory damages award and backpay award (ECF 221). For the following reasons, the motion is granted in part and denied in part. Specifically, the Court will award backpay of $223,361, front pay of $229,255, and defer on calculating prejudgment interest until all post-trial motions are resolved.

By way of background, Mr. Kengerksi commenced this action against the County on August 10, 2017. ECF 1. After amendments to the pleadings and motions practice, Mr. Kengerski's only remaining cause of action was one for retaliation under Title VII of the Civil Rights Act of 1964. On January 24, 2020, this Court granted summary judgment in favor of the County, having found that Mr. Kengerski failed to show he was subjected to a hostile work environment. ECF 91. However, the Third Circuit disagreed and remanded the case back to this Court. ECF 96. On remand, the retaliation claim survived summary judgment, and the case proceeded to trial.

A jury trial was conducted from October 3 to October 7, 2022. On October 7, 2022, the jury returned a verdict in favor of Mr. Kengerski and awarded him $400,000 in compensatory damages. ECF 207. At this Court's request, the jury also returned

an advisory verdict awarding Mr. Kengerski $230,528.97 in backpay and $300,000 in front pay. *Id.*

Because the jury's verdict on backpay and front pay was advisory, the Court deferred entering final judgment until those issues were resolved. Mr. Kengerski filed the instant motion on November 4, 2022, seeking a court award of backpay and front pay, to be reflected in the final judgment. ECF 221. Briefing on the matter has concluded, and the motion is ready for decision.

## LEGAL STANDARD

Title VII permits a successful plaintiff to seek equitable relief in the form of backpay, front pay, or "any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). The award of equitable relief rests in the discretion of the trial court. *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 n.1 (3d Cir. 2009). This is true even where a jury has provided an advisory verdict as to backpay and front pay. *Id.*; *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013) ("District courts are [ ] free to reject [advisory juries'] verdicts, as long as doing so is not independently erroneous." (citation omitted)).

Backpay and front pay calculations necessarily involve an element of prediction, specifically as to what the plaintiff would have made absent the employer's wrongful conduct. That said, the law favors awarding backpay and front pay to the successful Title VII plaintiff. *Caufield v. Ctr. Area Sch. Dist.*, 133 F. App'x 4, 13 (3d Cir. 2005) ("[B]ack-pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of Title VII."). As a result, "all that is required is that sufficient facts be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture." *Scully v. US WATS, Inc.*, 238 F.3d 497, 515 (3d Cir. 2001) (cleaned up); *see also* NLRB, CASEHANDLING MANUAL § 10540.1 (October 2020) ("The determination of gross backpay is not based on an unattainable standard of certainty. Rather, gross backpay

- 2 -

must merely be based on a reasonable method and reasonable factual conclusions."). Any ambiguity that arises in the backpay and front pay calculation is construed against the employer. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995) (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 889 (3d Cir.1984)).

## FINDINGS OF FACT

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(1). Accordingly, the Court makes the following findings of fact as to Mr. Kengerski's motion.

1. Allegheny County terminated Mr. Kengerski's employment with Allegheny County Jail on November 30, 2015. Ex. 53. At that time, Mr. Kengerski held the rank of captain, and his annual gross salary was $75,882.60. Ex. 54.

2. Mr. Kengerski began searching for work shortly thereafter, and became a part-time employee at Butler County Prison on February 21, 2016. ECF 230, 103:9-22; ECF 231, 166:18-167:3; ECF 232, 71:3-12, 74:10-19. This position included benefits for himself, but not his family. ECF 232, 106:23-107:3.

3. Mr. Kengerski worked just one day at Butler County Prison, because, as he and his wife credibly testified at trial, the emotional and psychological toll of his termination experience at Allegheny County Jail prevented him from continuing to work. ECF 230, 103:23-104:5; ECF 231, 166:17-167:1, 215:11-17; ECF 232, 74:10-19. Mr. Kengerski was able to return to work at Butler County Prison in October 2016. ECF 232, 74:25-75:6.

4. Upon returning to work, Mr. Kengerski worked 32 to 40 hours per week, every week, as a part-time employee. ECF 232, 75:21-76:17

5.    Mr. Kengerski became a full-time employee of Butler County Prison on May 7, 2017.  ECF 230, 104:10-16; ECF 232, 76:4-20.  This position included benefits for himself and his family.  ECF 232, 106:23-107:3.

6.    Mr. Kengerski has been employed full time at Butler County Prison since May 7, 2017.  ECF 231, 166:17-167:6.  At the time of trial, he held the rank of captain—the same rank he held when he was terminated from Allegheny County Jail.  *Id.* at 167:20-168:1, 190:9-14; Ex. 54.

7.    Mr. Kengerski has earned the following gross wages as an employee of Butler County Prison: $4,335 in 2016; $36,308.10 in 2017; $51,931.80 in 2018; $58,706.34 in 2019; $60,190.55 in 2020; and $67,357.81 in 2021.  ECF 222-2; ECF 222-3.  Based on Mr. Kengerski's Butler County Prison pay stub at ECF 234-3, Mr. Kengerski's 2022 gross income from Butler County Prison is $77,949.52.  ECF 234, p. 8 n.5.

8.    To calculate his backpay damages, Mr. Kengerski submitted the gross annual wages of two employees of Allegheny County Jail who were promoted to the rank of captain at around the same time as Mr. Kengerski.  ECF 222, pp. 3-4; ECF 222-3.  Mr. Kengerski testified as to these salaries at trial, and the figures were shown to the jury.  ECF 231, 219:7-220:16.  Further, these employees' salaries are publicly available from the Western Pennsylvania Regional Data Center website.  ECF 222, p. 3 n.3.  Mr. Kengerski averaged the employees' salaries as a comparator figure for what he would have made as a captain had he retained employment with Allegheny County.  The County has not disputed the veracity of the employees' salaries or objected to the way Mr. Kengerski made this calculation in his briefs.  The Court finds that it may take judicial notice of this publicly available information, and that to do so is not unfair to the County.  *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020) ("PharMerica is correct that information found on government websites is widely considered both self-authenticating and subject to judicial notice.");

- 4 -

*see also Theia Techs. LLC v. Theia Grp., Inc.*, No. 20-97, 2021 WL 291313, at *9 (E.D. Pa. Jan. 28, 2021), *appeal dismissed sub nom. Theia Techs. LLC v. Theia Grp. Inc.*, No. 21-1303, 2021 WL 3669376 (3d Cir. July 27, 2021).

9.     Based on the comparator average, Mr. Kengerski estimates his gross income from 2016-2022, had he retained employment with Allegheny County Jail, would have been: $76,171.96 in 2016; $79,323.56 in 2017; $83,185.62 in 2018; $87,423.24 in 2019; $87,403.49 in 2020; $88,040.20 in 2021; and $95,584.11 in 2022. ECF 222-3; ECF 234, p. 8 n.5.

10.    By subtracting his wages earned from employment at Butler County Prison from these estimated wages, Mr. Kengerski estimates a backpay award of $223,361.  ECF 221; ECF 222, p. 5.  This figure does not represent lost wages in the year 2022, as Mr. Kengerski did not provide any 2022 wage data at trial and does not seek 2022 lost wages as part of his motion for backpay.

11.    The County estimates a similar pay difference of $218,604.69 (through the date of the verdict), but submits that Mr. Kengerski is nonetheless ineligible for any backpay because he failed to mitigate his damages.  ECF 226, pp. 2-5.

12.    Mr. Kengerski does not independently calculate an award for front pay, but asks the Court to enforce the jury's award of $300,000.  ECF 222, pp. 7-8.  He argues that this award is "reasonable" considering the evidence at trial.  *Id.* at 8.

13.    Based on the record, which shows a heightened level of animosity between the parties, the Court finds that reinstatement is not a possible remedy, and that front pay is therefore an appropriate alternative.  *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 832 (3d Cir. 1994).

## <u>CONCLUSIONS OF LAW</u>

### I.     Backpay.

Title VII authorizes a court in its discretion to award backpay to a successful claimant in order to "make persons whole for injuries suffered through past

discrimination." *Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir. 1995) (cleaned up).  To calculate the award, the Court must take "the difference between the wages that the plaintiff would have earned absent discrimination and the wages that he or she actually earned," from the date of the unlawful termination to the date judgment is entered in the plaintiff's favor.  *Newton v. Pa. State Police*, No. 18-1639, 2022 WL 874306, at *8 (W.D. Pa. Mar. 24, 2022) (Kelly, J.) (citing *Durham Life*, 166 F. 3d at 156 and *Gallo v. John Powell Chevrolet, Inc.*, 779 F. Supp. 804, 813 (M.D. Pa. 1991)). There is a presumption in favor of backpay awards to the successful Title VII plaintiff, but that presumption is conditioned on the plaintiff's statutory duty to mitigate his damages.  *Booker*, 64 F.3d at 864.

The parties mostly agree on the bottom-line backpay calculation: Mr. Kengerski estimates a loss of $223,361.16, and the County estimates a loss of $218,604.69.  ECF 222-3; ECF 226, p. 2.  However, the County argues Mr. Kengerski is not entitled to any backpay because he failed to mitigate his damages.  Specifically, the County argues Mr. Kengerski is not entitled to any backpay because (1) he failed to apply for a job at Butler County Prison that opened in early 2016; (2) he did not work from February 22, 2016 to October 2, 2016 despite the availability of a position at Butler County Prison; (3) he stopped searching for other employment to mitigate his damages after he became a full-time employee of Butler County Prison on May 7, 2017; and (4) at a minimum, his backpay award from February 21, 2016 to May 7, 2017 (when he worked part-time) must be reduced, based on the part-time pay at Allegheny County.  ECF 226, pp. 3-6.  After careful consideration, the Court is not persuaded by the County's arguments.

A Title VII claimant has a duty to mitigate his damages by "using reasonable diligence" to obtain "substantially equivalent employment."  *Booker*, 64 F.3d at 866 (cleaned up).  "Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job

responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Id.* (cleaned up). "Reasonable diligence" means the plaintiff has shown a "good faith" and "continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment," even if the plaintiff is ultimately not successful in obtaining a position. *Id.* at 865. It is the employer's burden to prove a failure to mitigate by showing "either that other substantially equivalent positions were available to [the plaintiff] and he failed to use reasonable diligence in attempting to secure those positions, or, alternatively, that [the plaintiff] withdrew entirely from the employment market." *Caufield v. Ctr. Area Sch. Dist.*, 133 F. App'x 4, 10-11 (3d Cir. 2005) (cleaned up).

At the outset, the Court takes into consideration that the jury was instructed on Mr. Kengerski's duty to mitigate his damages with respect to the compensatory damages award. ECF 232, 156:12-157:3. With that instruction, the jury found in Mr. Kengerski's favor and awarded him $400,000 in compensatory damages. ECF 207. Thus, implicit in the jury's verdict is that the jury clearly rejected the County's mitigation argument at trial. The Court therefore is inclined to give that finding due regard and accept it. *See Fillman v. Valley Pain Specialists, P.C.*, No. 13-1609, 2016 WL 192656, at *4 (E.D. Pa. Jan. 15, 2016) ("Although a trial court is in no way bound by the answers of an advisory jury, it may adopt the jury's findings as its own." (cleaned up)); *Clawson v. Mountain Coal Co.*, No. 01-2199, 2007 WL 201253, at *11 (D. Colo. Jan. 24, 2007) ("Given that the jury's evaluation of the experts' competing opinions was both contemporaneous and considered, as compared to any weighing of such opinions that this Court would do in hindsight and on a cold record several months after the fact, the Court is inclined to defer to the jury's decision."), *aff'd sub nom. Dillon v. Mountain Coal Co.*, 569 F.3d 1215 (10th Cir. 2009).

But even if the Court did not consider the jury's verdict, a careful and independent review of the record shows that Mr. Kengerski appropriately mitigated

his damages.   That is, Mr. Kengerski began searching for work shortly after his termination in November 2015, and he took on a position as a "part-time, irregular" corrections officer at Butler County Prison a few months later, on February 21, 2016. ECF 230, 103:14-22; ECF 232, 70:18-71:12.   He worked for only one day, however, due to the emotional and psychological impact of his termination from Allegheny County Jail.   ECF 230, 103:23-104:5; ECF 231, 166:17-167:1, 215:11-17; ECF 232, 74:10-19.   Mr. Kengerski then returned to work on a part-time basis at Butler County Prison in October 2016.   ECF 232, 74:25-75:6.   He continued to work on a part-time basis (as a "regular" corrections officer) until May 7, 2017, when he became a full-time employee.   ECF 230, 104:10-16; ECF 232, 76:4-20.   Even though Mr. Kengerski was classified as a "part-time" employee, he worked 32 to 40 hours per week, every week, beginning in the Fall of 2016 until he became a full-time employee.[1]   ECF 232, 75:21-76:17.   That is sufficient to demonstrate Mr. Kengerski's diligence towards mitigating his losses.

The County posits that "Mr. Kengerski's complete and total failure to engage in any efforts to find substantially similar employment, and acknowledgement that as of May 2017, he was satisfied with the job he had, as a matter of law and justice necessitates a finding that he is not entitled to back pay at all."  ECF 226, p. 5.  But the County does not offer any evidence or argument that positions substantially equivalent to Mr. Kengerski's former Allegheny County Jail position were available.[2] All the County has shown is that other positions at corrections facilities may have

---

[1] Testimony at trial suggested that Mr. Kengerski had to be promoted to full-time work by starting out as a part-time employee, such that he did not have a choice to immediately work full-time.  ECF 232, 106:19-107:3 (Mr. Kengerski: "When you get hired on, you don't have full family benefits until you make the full-time rank.").

[2] Mr. Kengerski's awareness, or lack thereof, of the availability of positions at corrections facilities in Pennsylvania does not substitute the County's burden to show the actual existence of those positions and Mr. Kengerski's failure to seek them out.

existed, not that those positions in fact existed, were available, and afforded the same promotional opportunities, compensation, job responsibilities, and status as those at the jail, which is located in the county with the second largest population in Pennsylvania and the largest population in the Western District.[3]

Further, the County mistakenly urges the Court to deny backpay because Mr. Kengerski was "satisfied" with the Butler County Prison position. ECF 226, p. 5. But Mr. Kengerski's satisfaction with that position does not right the wrongful termination he suffered or make him whole—indeed, it is undisputed that Mr. Kengerski's pay at Butler County is less than his comparators' salaries at Allegheny County. ECF 226, pp. 5-6. A backpay award is therefore not only appropriate but necessary to restore Mr. Kengerski to the position he would have been in absent his wrongful termination. *Donlin*, 581 F.3d at 84.

As for the period when Mr. Kengerski did not work (February 21, 2016 to October 2, 2016), Mr. Kengerski and his wife both credibly testified that the circumstances of his termination from Allegheny County Jail took an immense emotional and psychological toll on him, resulting in his inability to return to work. ECF 231, 215:11-17; ECF 232, 111:25-112:17. Thus, Mr. Kengerski's inability to work during this time was a direct result of the County's conduct and so does not disqualify a backpay award. *See Russell v. Bd. of Pub. Educ.*, No. 06-1668, 2008 WL 4671499, at *8 (W.D. Pa. Oct. 21, 2008) (McVerry, J.) ("[E]mployers may be responsible for wage loss during periods of disability when such disability might not have occurred but-for the employer's actions.").

---

[3] *See, e.g.*, PENNSYLVANIA CENTER FOR WORKFORCE INFORMATION & ANALYSIS, County Profiles,
https://www.workstats.dli.pa.gov/Products/CountyProfiles/Pages/default.aspx, (last visited Jan 5., 2023) (estimating Allegheny County 2021 population as 1,246,116 and average wage as $58,910, and Butler County 2021 population as 192,561 and average wage as $53,620).

Given the foregoing, the Court concludes that a backpay award is appropriate in order to make Mr. Kengerski whole and compensate his lost wages as a result of his termination.  The Court further finds that Mr. Kenergski's proposed calculation of backpay is reasonable, as it is based on a comparator average gross salary for a captain at Allegheny County Jail less the gross wages he earned at Butler County Prison, from November 2015 through the end of 2021:

|  | Piendel | Frank | Average | Kengerski | Wage Loss |
|---|---|---|---|---|---|
| 2016 | $ 76,466.94 | $ 75,876.97 | $ 76,171.96 | $ 4,335.00 | $ 71,836.96 |
| 2017 | $ 79,386.03 | $ 79,261.09 | $ 79,323.56 | $ 35,665.41 | $ 43,658.15 |
| 2018 | $ 83,248.11 | $ 83,123.13 | $ 83,185.62 | $ 51,931.80 | $ 31,253.82 |
| 2019 | $ 88,345.7 | $ 86,500.77 | $ 87,423.24 | $ 58,706.34 | $ 28,716.90 |
| 2020 | $ 87,403.49 | $ 87,403.48 | $ 87,403.49 | $ 60,190.55 | $ 27,212.94 |
| 2021 | $ 87,187.63 | $ 88,892.77 | $ 88,040.20 | $ 67,357.81 | $ 20,682.39 |
| **Back Pay Total** | | | | | **$ 223,361.16** |

ECF 222-3.

The Court therefore accepts this proposed calculation, and awards backpay in the amount of $223,361.[4]

---

[4] This requested figure appears to undercount the amount of backpay that could have been awarded, as Mr. Kengerski does not seek backpay for nine months of 2022 up to the date of the verdict, nor does he seek any lost benefits.  He also does not seek any adjustment for any taxes that may be owed on the backpay award.  The Court assumes that this was intentional, and that Mr. Kengerski is aware of the tax consequences of a lump-sum payment award, or will otherwise make the necessary adjustments on his tax returns.  *See Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441-42 (3d Cir. 2009).  Given that the plaintiff bears the burden of proof as to backpay, the Court will award only what Mr. Kengerski seeks and for which he has provided evidentiary support.

## II.   Front Pay.

In its advisory verdict, the jury awarded Mr. Kengerski $300,000 in front pay. ECF 207.   Front pay "is an alternative to the traditional equitable remedy of reinstatement, which would be inappropriate where there is a likelihood of continuing disharmony between the parties or unavailable because no comparable position exists." *Donlin*, 581 F.3d at 86 (citations omitted).   Its purpose is to address the victim's lost future earnings because he "cannot be placed in the position [he] was unlawfully denied." *Id.*   As an award directed at future loss, some amount of prediction is required. *Id.* at 87.   But courts retain "discretion in selecting a cut-off date for an equitable front pay remedy subject to the limitation that front pay only be awarded for a reasonable future period required for the victim to reestablish [his] rightful place in the job market." *Id.* (cleaned up).

The County asks the Court not to award front pay, or else substantially reduce it, for three reasons: (1) Mr. Kengerski's satisfaction with the Butler County Prison position constitutes a failure to mitigate; (2) Mr. Kengerski's salary at Butler County Prison has increased faster than his Allegheny County comparators' salaries; and (3) the jury's award amounts to 34 years of front pay, which is unreasonable.  ECF 226, pp. 7-10.  The Court takes each argument, in turn.

First, the County's mitigation argument fails for the same reasons as discussed in the context of backpay.  As explained above, the record shows that Mr. Kengerski did mitigate his damages, and that the Court is empowered to make Mr. Kengerski whole following his termination, regardless of Mr. Kengerski's satisfaction with the position at Butler County Prison.

Second, the County's argument about the pay increases at Butler County Prison is also unpersuasive.  True, the data reflects a recent 15% spike in Mr. Kengerski's pay at Butler County Prison—but that appears to be due to his promotion from correctional officer to sergeant, and sergeant to captain.  ECF 230, 106:16-107:6;

ECF 232, 77:7-15.  There is nothing in the record about annual pay increases at Butler County Prison (or at Allegheny County Jail, for that matter), such that the Court could find that Mr. Kengerski's pay at Butler County Prison will eventually be equal to the salary for a captain at the Allegheny County Jail.  At most, the trial evidence reflects that there will always be a significant pay gap between the two counties given that Allegheny County is a second-class county and Butler County is a fourth-class county, and Pennsylvania law generally provides for higher salaries for government positions in higher-class counties.[5]  *See* ECF 231, 220:2-15.  Given the speculative nature of future pay increases in each county, in calculating a front pay award, the Court will simply use the 2022 gross-pay difference submitted by Mr. Kengerski as the baseline figure to calculate future lost pay.  The data reflects that the 2022 salary for captains at Allegheny County Jail is $95,584.11, and Mr. Kengerski's salary at Butler County Prison is $77,949.52, resulting in an annual difference of $17,635.  ECF 234, p. 8 n.5.

Third, as to the time frame for any front pay award, the County is partially right that the time frame for the jury's advisory verdict appears to be too long, and so the Court will reduce the front pay award to prevent against a potential windfall.  To calculate front pay, the Court estimates the number of years Mr. Kengerski may reasonably continue to work, and multiplies that by the 2022 wage difference of $17,635.  At the time of the verdict, Kengerski was 52 years old.  ECF 239.  There is no evidence that Mr. Kengerski would have been physically unable to continue working at Allegheny County Jail until the typical retirement or Medicare-eligibility age of 65, and Mr. Kengerski has demonstrated an upward employment trajectory by advancing from part-time employee to the rank of captain at Butler County Prison after his termination from Allegheny County Jail.  So the Court reasons that Mr.

---

[5] *See, e.g.,* 16 Pa. Stat. Ann. § 210; *id.* at §§ 1560, 11011-1 (setting county officer salaries).

Kengerski has approximately 13 years of work-life ahead of him, and that 13 years of front pay is therefore reasonable.  *See Donlin*, 581 F.3d at 88 (collecting cases affirming reasonableness of front pay awards representing 10 or more years of employment); *Bianchi v. City of Philadelphia*, 80 F. App'x 232, 237 (3d Cir. 2003) ("The jury awarded Bianchi $512,500 as front pay.  The jury heard that Bianchi's salary was $49,000 annually, and could infer that at age 52, Bianchi had approximately thirteen more years of work left until his retirement.  The award was not unreasonable." (cleaned up)).  Multiplying Mr. Kengerski's 2022 wage loss of $17,635 by 13 years results in a front pay award of $229,255.

Mr. Kengerski argues that it is not unreasonable for the Court to accept the jury's advisory award of $300,000.  The Court disagrees.  Awarding 17 years of front pay (through when Mr. Kengerski is 69 years old and past a normal retirement age) is too speculative, and would result in a potential windfall.  *See Donlin*, 581 F.3d at 88; *Newton*, 2022 WL 874306, at *10 (collecting cases supporting award of front pay up to, but not past, retirement age); *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 514 (E.D. Pa. 2018) (holding 10-year front pay award was too speculative where plaintiff would reach retirement age in only two years).  The Court will award front pay, but reduce the front pay award to be consistent with employment to age 65.

## III.  Interest.

Mr. Kengerski moves for prejudgment interest on both the backpay award and the jury's award for compensatory damages.  Both parties agree that the issue of interest should be dealt with after final judgment is entered, and post-judgment motions are filed.  Therefore, the Court holds this issue in abeyance.

********************

For all of these reasons, this **20th day of January, 2023**, it is **hereby ORDERED** that Plaintiff's motion for an award of backpay, front pay, and prejudgment interest (ECF 221) is **GRANTED** in part and **DENIED** in part.  The

Court awards $223,361 in backpay and $229,255 in front pay to Mr. Kengerski.  The Court defers ruling on an award of prejudgment interest until after entry of judgment and resolution of all post-judgment motions.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge